**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LUIS R. PAGAN,           )
                                     )     Civil Action No. 20 – 254J
              Petitioner,     )
                                     )
            v.                 )     Magistrate Judge Lisa Pupo Lenihan
                                     )
VICKI MOSER, *Warden of FCI*  )
*Loretto*,                      )
                                     )
             Respondent.   )

## **MEMORANDUM OPINION**[1]

Currently pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Luis R. Pagan ("Petitioner") pursuant to 28 U.S.C. § 2241.  ECF No. 4.  The Petition seeks release to home confinement under § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020).  For the following reasons, the Petition will be dismissed.

### A.     **Background**

Petitioner is an inmate at the Federal Correctional Institution Loretto ("FCI-Loretto"), serving a term of 60 months imprisonment imposed by the United States District Court for the Middle District of Pennsylvania (the "Sentencing Court") on August 13, 2018, after pleading guilty to one count of Conspiracy to Distribute and Possession with Intent to Distribute 500 Grams or More of Cocaine Hydrochloride in violation of 21 U.S.C. § 846.[2]  *See* United States v. Pagan, No. 1:15-cr-258, ECF No. 1064 (M.D. Pa.); *see also* Resp't Exh. 2, ECF No. 13-8.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  ECF Nos. 9 & 12.
[2] Assuming Petitioner receives all good conduct time available to him pursuant to 18 U.S.C. § 3624(b), his projected release date is January 20, 2023.  *See* Resp't Exh. 1, ECF No. 13-1, ¶ 3, *see also* Resp't Attach. A, ECF No. 13-2.

On January 17, 2020, the Federal Bureau of Prisons ("BOP") designated and transferred Petitioner to FCI-Loretto.  *See* Resp't Exh. 1, ECF No. 13-1, ¶ 5; *see also* Resp't Attach. B, ECF No. 13-3.  On September 27, 2020, as COVID-19 spread across the country, Petitioner submitted an "Inmate Request for Compassionate Release Consideration Form" to his unit team at FCI-Loretto.  *See* Resp't Attach. C, ECF No. 13-4.  In doing so, Petitioner claimed to suffer from a "Debilitated Medical Condition" and asked Respondent for "compassionate release" or "home confinement under the CARES Act."  Id.  More specifically, Petitioner stated that he suffered from obesity and diabetes, and alleged that he wanted to help his father who was receiving dialysis due to kidney failure.  Id.

On October 21, 2020, Respondent denied Petitioner's request.  *See* ECF No. 4-1, p.1.  In her response letter, Respondent explained that, because Petitioner had not been diagnosed with an incurable, progressive illness, did not suffer from a debilitating injury, was not confined to a bed or chair more than 50% of waking hours, and did not have a diagnosis of a cognitive deficit which affected his mental capacity or function, then he was not eligible for Compassionate Release due to a Debilitated Medical Condition.  Id.  Respondent also noted in her letter that Petitioner's request for home confinement was denied because he did not meet the criteria set forth in the Attorney General's memorandum.  Id.  Respondent then made clear that Petitioner had the right to appeal the denial and could do so "through the Administrative Remedy Program or . . . directly to the Sentencing Court for the Compassionate Release/Reduction in Sentence [pursuant to the First Step Act]."[3]  Id.  BOP records indicate that Petitioner did not appeal the

---

[3] The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  However, before they make such requests, defendants must at least ask the BOP to do so on their behalf and give BOP thirty days to respond.  *See* § 3582(c)(1)(A).  And, even then, "[s]ection 3582's text requires [motions for compassionate release] to be addressed to the sentencing court[.]" United States v. Raia, 954 F.3d 594, 596 (3d Cir. 2020).

denial of home confinement through the BOP's Administrative Remedy Program.  *See* Resp't
Exh. 1, ECF No. 13-1, ¶ 6; *see also* Resp't Attach. D, ECF No. 13-5.  And, review of the
Sentencing Court's docket reveals that Petitioner did not file a motion seeking compassionate
release or reduction in his sentence pursuant to the First Step Act.  *See* United States v. Pagan,
No. 1:15-cr-258 (M.D. Pa.).

Petitioner initiated the instant habeas proceedings on or about December 30, 2020.  ECF
No. 1.  In his Petition, Petitioner claims that he should be released to home confinement under
the CARES Act because he meets the BOP's qualifications and because the BOP has already
pre-approved him for home confinement and he has signed his release documents.  Respondent
filed a Response to the Petition on April 15, 2021.  ECF No. 13.  The Petition is now ripe for
review.

**B.**     **Discussion**

Generally speaking, Petitioner is challenging the BOP's denial of his release to home
confinement, claiming that he qualifies for release pursuant to § 12003(b)(2) of the CARES Act
and the Memorandums issued by the Attorney General on March 26, 2020 and April 3, 2020.  As
part of the CARES Act, Congress sought to address the spread of the coronavirus in prisons by
permitting the BOP to expand the use of home confinement under 18 U.S.C. § 3624(c)(2).  Upon
direction of the Attorney General, section 12003(b)(2) of the CARES Act temporarily suspends
the limitation of home confinement that is set forth in 18 U.S.C. § 3642(c)(2) and authorizes the
Director of the BOP to place prisoners in home confinement only during the covered emergency
period and when the Attorney General finds that the emergency conditions are materially
affecting the BOP's functioning.

By Memorandum dated March 26, 2020, the Attorney General directed the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[4]  The Attorney General specifically directed the BOP to consider the totality of the circumstances of each inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors including: the age and vulnerability of the inmate to COVID-19; the security level of the facility holding the inmate; the inmate's conduct while incarcerated; the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); whether the inmate has demonstrated the verifiable reentry plan that will prevent recidivism and maximize public safety; and the inmate's crime of conviction and assessment of the danger posed by the inmate to the community.  Id.  Additionally, the inmate's risk factors for severe COVID-19 illness, as well as the risks of COVID-19 in the inmate's prison facility and the location in which the inmate seeks home confinement are also considered before granting an inmate discretionary release.  Id.

By Memorandum dated April 3, 2020, the Attorney General exercised authority under the CARES Act to further increase home confinement and authorized the Director of the BOP to immediately maximize transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elton, and other similarly situated Bureau facilities where COVID-19 was materially affecting operations.[5]

---

[4] See https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited May 4, 2021).
[5] See https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited May 4, 2021).

On April 5, 2020, the BOP gave the following guidance on COVID-19 and home confinement:[6]

> Inmates do not need to apply to be considered for home confinement.  Case management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General on March 26, 2020 and April 3, 2020.  The Department has also increased resources to review and make appropriate determinations as soon as possible.

> While all inmates are being reviewed for suitability, any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager.  The BOP may contact family members to gather needed information when making decisions concerning Home Confinement placement.

As he did when he sought release to home confinement by request filed to Respondent on September 27, 2020, Petitioner claims in his Petition that he is eligible for home confinement under the CARES Act and the Attorney General's Memorandums because his obesity and diabetes make him particularly vulnerable to COVID-19.  Respondent submits that the Petition must be dismissed because Petitioner did not exhaust his available administrative remedies, and that even if he had, this Court does not have the authority to overturn her decision to deny Petitioner release to home confinement.

### 1.   <u>Exhaustion of Administrative Remedies</u>

Although there is no statutory exhaustion requirement attached to 28 U.S.C. § 2241, there is a judicially created exhaustion requirement for habeas petitions brought under that section. <u>Callwood v. Enos</u>, 230 F.3d 627, 633-34 (3d Cir. 2000) (citing <u>Schandelmeier v. Cunningham</u>, 819 F.2d 52, 53 (3d Cir. 1986), <u>Arias v. United States Parole Comm'n</u>, 648 F.2d 196, 199 (3d Cir. 1981)).  Courts in this Circuit have recognized that a petitioner challenging the fact,

---

[6] *See* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited May 4, 2021).

duration, or execution of his sentence – including a request for release to home confinement – must first demonstrate that he has fully exhausted his available administrative remedies. *See*, *e.g.*, <u>Adams v. Trate</u>, 2020 WL 7337806, at \*2 (W.D. Pa. Dec. 14, 2020) (denying habeas petition for petitioner's failure to exhaust his administrative remedies after his request for home confinement was denied); <u>Chaparro v. Ortiz</u>, 2020 WL 4251479, at \*5 (D.N.J. July 24, 2020) (dismissing for failure to exhaust administrative remedies habeas petition requesting release to home confinement under the CARES Act); <u>Gottstein v. Finley</u>, 2020 WL 3078028, at \*3-4 (M.D. Pa. June 10, 2020) (dismissing without prejudice for his failure to exhaust his administrative remedies petitioner's habeas petition requesting immediate release to home confinement under the CARES Act); <u>Cordaro v. Finley</u>, 2020 WL 2084960, at \*5 (M.D. Pa. Apr. 3, 2020) (dismissing without prejudice petitioner's habeas petition for his failure to exhaust his administrative remedies after his request for home confinement under the CARES Act was denied by respondent); <u>Furando v. Ortiz</u>, 2020 WL 1922357 (D.N.J. Apr. 21, 2020) (dismissing without prejudice habeas petition seeking immediate release to home confinement under the CARES Act due to his failure to exhaust his BOP administrative remedies).  To do so, the inmate must satisfy the multi-layered administrative process set forth at 28 C.F.R. §§ 542.10-18.  That process requires the inmate to: (1) file a complaint with the warden of his institution within twenty days of the action forming the basis of the complaint; (2) appeal any denial of that initial complaint to the BOP's Regional Director; and (3) appeal any denial by the Regional Director to the BOP's Office of General Counsel.  <u>Id</u>., §§ 542.14-15.  The Third Circuit has stated that exhaustion is required for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to

6

correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).  The Third Circuit recently reiterated that "strict compliance with . . . exhaustion requirement[s] takes on added – and critical – importance" during the current pandemic "[g]iven the BOP's shared desire for a safe and healthy prison environment." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Here, Petitioner was specifically advised that he could appeal Respondent's October 21, 2020 denial of home confinement or compassionate release either through the administrative remedy process or directly to the Sentencing Court via a motion for compassionate release/reduction in sentence under the First Step Act, and he did neither.  As such, Petitioner did not exhaust his administrative remedies and there is no basis to excuse his failure to do so.  For this reason, his Petition will be dismissed.

##### 2.     The CARES Act and Judicial Review of Home Confinement Denial

Even if Petitioner had exhausted his administrative remedies, the Court notes that the Petition would nevertheless be subject to dismissal because the Court has no authority under the CARES Act to grant Petitioner home confinement.  In this regard, a district court generally has limited authority to modify a federally-imposed sentence once it commences.  Although the First Step Act permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence, the CARES Act did not grant the district court the power to order an inmate to home confinement. See United States v. Calabretta, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) ("The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP") (citation omitted).  "Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion." Aigebkaen v. Warden, 2020 WL

6883438, at *4 (D.N.J. Nov. 24, 2020) (citing 18 U.S.C. § 3624(c)(2)); United States v. Dunich-Kolb, 2020 WL 6537386, at *12 (D.N.J. Nov. 5, 2020) (noting that the "BOP has the first and last word" in decisions on home confinement.  *See also* Prows v. Federal Bureau of Prisons, 981 F.2d 466, 468, 470 (10th Cir. 1992) (holding prerelease custody statute "does not bestow upon federal inmates an enforceable entitlement to any particular form of prerelease custody" and provides merely "an authorization, rather than a mandate, for nonprison confinement.")  The CARES Act did not remove that discretion, it only gave the Attorney General the authority to expand the class of inmates that can be released on home confinement under 18 U.S.C. § 3624(c)(2).  Therefore, the Petition is also subject to dismissal because the CARES Act does not provide this Court with the authority to grant Petitioner home confinement.

On a final note, the Court will decline to construe the Petition as a motion for compassionate release/reduction in sentence under the First Step Act since such a motion must be filed with a defendant's sentencing court and Petitioner was not sentenced by this Court.

C.    **Conclusion**

Based on the aforementioned reasons, the Petition will be dismissed.  A separate Order will issue.

Dated: May 6, 2021.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Luis R. Pagan
75050-067
FCI Loretto
Federal Correctional Institution
P.O. Box 1000
Cresson, PA  16630

Counsel of Record
(*via CM/ECF electronic mail*)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUIS R. PAGAN, | ) | |
| | ) | Civil Action No. 20 – 254J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| VICKI MOSER, *Warden of FCI* | ) | |
| *Loretto*, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>ORDER</u>

**AND NOW**, this 6th day of May 2021;

**IT IS HEREBY ORDERED** that, for the reasons set forth in the accompanying

Memorandum Opinion, the Petition for Writ of Habeas Corpus (ECF No. 4) is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of

Respondent and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(B) of the Federal

Rules of Appellate Procedure, Petitioner has sixty (60) days to file a notice of appeal as provided

by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Luis R. Pagan
      75050-067
      FCI Loretto
      Federal Correctional Institution
      P.O. Box 1000
      Cresson, PA  16630

      Counsel of Record

10

(*via CM/ECF electronic mail*)